UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JAMES KIMPLE,

        Petitioner,                Case No. 2:16-cv-273

v.                                      Honorable Gordon J. Quist

CATHERINE BAUMAN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner James Kimple is incarcerated with the Michigan Department of Corrections at the Marquette Branch Prison (MBP) in Marquette, Michigan. Following a three-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, and felony firearm, Mich. Comp. Laws § 750.227b. On June 21, 2013, the court sentenced Petitioner as a habitual offender-second offense, Mich. Comp. Laws § 769.10, to a prison term of 40 to 60 years for second-degree murder to be served consecutive to a prison term of 2 years for the felony firearm violation.

On December 13, 2016, Petitioner filed his habeas corpus petition raising 2 grounds for relief, as follows:

    I.      The trial court denied Mr. Kimple a fair trial and the right to present a defense by denying the requested instructions on self-defense, given the evidence presented at trial regarding the prolonged bullying Mr. Kimple suffered at the hands of the decedent and his reasonable fear of great bodily harm on the night of the shooting; in the alternative, trial counsel was ineffective for failing to object to the final jury instructions.

    II.     The prosecutor engaged in misconduct in closing argument which violated Mr. Kimple's due process rights; trial counsel was constitutionally ineffective for failing to object to the misconduct.

(Pet., ECF No. 1, PageID.3.)  Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they are procedurally defaulted or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Juan Tyler Riddle was fatally shot in the back at approximately 9:10 p.m. in Albion on May 4, 2012.  A few hours later, defendant surrendered himself to police.  Defendant admitted to Detective Luis Tejada of the Albion Department of Public Safety that he had shot Riddle when they met on the street, but had done so because he feared Riddle was going to seriously injure him.  Defendant was subsequently arrested and bound over for trial.
>
> At trial, Tejada testified that defendant told him the shooting stemmed from a chance encounter with Riddle.  Defendant was walking downtown when Riddle pulled up next to him in his car and rolled down the window on the passenger side.  The two exchanged words.  Riddle then pulled over and exited the car.  Afraid that Riddle was going to draw a weapon out of the car, defendant pulled his 9mm handgun out of his waistband and fired twice in Riddle's direction, after which Riddle turned and ran away.  Having accidentally ejected the handgun's clip, defendant paused long enough to reinsert it and pull the slide back to chamber another round, and then fired two or three more shots at Riddle as he fled.  According to the forensic pathologists, one of these bullets hit Riddle in the back and passed upward through his heart, causing his death.
>
> Tejada also identified inconsistencies between the evidence and aspects of defendant's statement.  First, the bullet-hole evidence found at the scene contradicted defendant's explanation of the shooting.  Second, the layout of the street was inconsistent with defendant's explanation of where he was when he first saw Riddle's car.
>
> Defendant's girlfriend and mother both testified that defendant was afraid of Riddle and Riddle's brother, because they had long harassed him.  Defendant's mother testified that the latest harassing incident had occurred the day before the shooting, when Riddle had knocked a meal out of defendant's hand and then stomped on it.  This incident, defendant told Tejada, prompted him to begin carrying a handgun for protection.

(Mich. Ct. App. Op., ECF No. 6-10, PageID.263-264.)

Petitioner was charged with open murder. (Calhoun Cty. Cir. Ct. Docket Sheet, ECF No. 6-1, PageID.56.) The prosecutor presented testimony that Petitioner and his mother told police he had shot Riddle at the direction of his girlfriend. (Trial Tr. II, ECF No. 6-6, PageID.153, 192.)

Defense counsel explored several possible defenses before trial. Petitioner was examined to determine his competence, but was found to be competent. (Hrg. Tr. II, ECF No. 6-4, PageID.116.) Petitioner's counsel also submitted proposed jury instructions that included instructions on self-defense. At trial, however, the court did not read the self-defense instructions and Petitioner's counsel never raised the issue of self-defense.[1] When the judge asked counsel if either had any objection to the instructions as read—instructions that made no mention of self-defense—each counsel indicated he did not. (Trial Tr. III, ECF No. 6-7, PageID.233.)

Defense counsel argued that Petitioner's fear of Riddle was justified in light of the history of confrontation between them. (*Id.*, PageID.227.) Counsel contended that Petitioner simply panicked and did not act rationally when he fired wildly at Riddle. (*Id.*, PageID.227-228.) He urged the jury to convict Petitioner of no more than voluntary manslaughter. (*Id.*)

The jury deliberated for several hours before finding Petitioner guilty of second-degree murder, a middle ground between the first-degree murder conviction sought by the prosecutor and the voluntary manslaughter conviction proposed by the defense.

Petitioner, with the assistance of counsel, raised two issues in the Michigan Court of Appeals—the same issues he raises in this Court. (Pet'r's Appeal Br., ECF No. 6-10, PageID.282.) By unpublished opinion issued February 17, 2015, the court of appeals affirmed the trial court. (Mich. Ct. App. Op., ECF No. 6-10, PageID.263-269.) Petitioner sought leave to appeal that decision in the Michigan Supreme Court. That court denied leave by order entered September 29, 2015. (Mich. Order, ECF No. 6-11, PageID.360.) This timely petition followed.

---

[1] Petitioner's counsel never uttered the words "self defense" during the trial.

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable

4

facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Petitioner contends that he was denied due process by the trial court's failure to instruct the jury on self-defense. Alternatively, Petitioner argues that his counsel rendered ineffective assistance by failing to object to the instructions which excluded the self-defense instruction. The Michigan Court of Appeals concluded that Petitioner had waived his claim of instructional error by expressly approving the instructions as read. (Mich. Ct. App. Op., ECF No. 6-10, PageID.264.) The appellate court noted that even if Petitioner had not waived the claim he was not entitled to the instruction because he never made a self-defense claim at trial.[2] Instead, the court noted, he "argued

---

[2] Even though Petitioner's counsel never raised self-defense at trial, the prosecutor dedicated some effort to refuting such claim. Petitioner's counsel, through the testimony of Detective Tejeda, drew out that Petitioner told the detective that he was afraid of Riddle and afraid that Riddle would harm him. (Trial Tr. III, ECF No. 6-7, PageID.212.) The prosecutor then contrasted those statements of fear with the fact that Riddle was shot in the back as Riddle fled and Petitioner advanced.

5

that [he] panicked and began shooting wildly during a confrontation with Riddle . . . ." (*Id*., PageID.265.)  Finally, the court of appeals noted, there was no evidence admitted supporting a self-defense argument:

> CJI2d 7.23 ("Past Violence by Complainant or Decedent") instructs the jury to consider evidence "that the decedent may have committed violent acts in the past and that the defendant knew about these acts" when considering whether a defendant "honestly and reasonably feared for his safety."  CJI2d 7.23.1.  Here, no one testified that Riddle was a violent and brutal person.  The only act of violence attributed to Riddle was that he had knocked a chicken dinner out of defendant's hand and stomped on it.  No one alleged that defendant and Riddle had ever fought or that Riddle had ever specifically threatened defendant harm.  In the absence of evidence that Riddle committed specific violent acts, the trial court did not err in omitting CJI2d 7.23 from its instructions to the jury.  See *People v. Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002) (stating that "whether a jury instruction is applicable to the facts of the case lies within the sound discretion of the trial court").

(*Id*.)

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

---

(*Id*., PageID.212-214.)  Petitioner's counsel emphasized Petitioner's fear, not for the purpose of establishing a self-defense claim, but to demonstrate that Petitioner did not have the necessary intent to warrant a first-degree or second-degree murder conviction.  (*Id*., PageID.228-229.)

Similarly, the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .")

Petitioner contends he was denied the opportunity to present a complete defense here. He claims the trial court should have instructed the jury on the elements of the affirmative defense of self-defense. The Michigan Court of Appeals concluded otherwise.

There is no clearly established federal law mandating that a state court issue an instruction on self-defense. *Phillips v. Million*, 374 F.3d 395, 397-98 (6th Cir. 2004) (holding that no clearly established Supreme Court requires a state court to issue an instruction on self-defense). The Sixth Circuit has concluded that the instruction is constitutionally required under certain circumstances. *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002) (holding that the right of a defendant to claim self-defense is a fundamental right and that, where sufficient evidence to support the charge is introduced, the failure to give the charge violates his due process right to present a complete defense). Circuit authority, however, does not suffice to clearly establish federal law for purposes of the AEDPA. *See Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).[3]

---

[3] The Sixth Circuit's analysis in *Taylor* appears to be exactly the sort of "refining" or "sharpening" of a general principle into a specific legal rule that *Marshall* and *Lopez* cautioned against. The *Taylor* majority relied on Supreme Court authority with respect to the general rule regarding a defendant's right to present a complete defense, and then announced a necessary corollary of that rule that a defendant has the right to have the jury instructed on his or her defense, under appropriate

7

Moreover, the *Taylor* court's analysis is premised on the fact that sufficient evidence to support the defense of self-defense had been admitted. The Michigan Court of Appeals determined that Petitioner had failed to submit evidence supporting his claim of self-defense. That determination finds ample support in the record. To demonstrate that Petitioner acted in self-defense, he would have to show that he honestly and reasonably believed he was in danger of death or serious bodily harm. *See, e.g., Fleming v. Metrish*, 556 F.3d 520, 533 (6th Cir. 2009) (Michigan law required [the defendant] to show that he honestly and reasonably believed that he was in danger of serious bodily harm or death . . . ."). Such a claim is barely tenable with regard to Petitioner's first shot, but it is patently absurd to suggest that after Petitioner replaced the clip and chambered another bullet—and after he saw Riddle fleeing, weaponless—that Petitioner was justified in continuing to advance on Riddle and continuing to bring deadly force to bear against Riddle by shooting him in the back.

Petitioner has failed to demonstrate that the state court's determination is contrary to, or an unreasonable application of, clearly established federal law, or that the state court's underlying factual determinations are unreasonable on the record. Accordingly, Petitioner is not entitled to habeas relief regarding the absence of a self-defense instruction.

Anticipating that counsel's failure to object might cost Petitioner his instructional error claim, Petitioner contended it was ineffective assistance for counsel to forego the self-defense argument as a defense to the murder charges. The court of appeals rejected that claim as well:

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v. Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). In order for ineffective assistance of counsel to justify reversal of an otherwise valid conviction, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as

---

circumstances. *Taylor*, 288 F.3d at 851-52. The *Taylor* majority looked to deeply rooted tradition, federal criminal law not expressly grounded in the United States Constitution, and the conclusions of other Courts of Appeals to support its corollary, but not to United States Supreme Court constitutional decisions. *Id*. at 852-53. The *Taylor* majority stated: "The earth is not flat, nor does the sun revolve around it, but we do not need to be told that by the Supreme Court in order for us to apply it in a case." *Id*. at 853. Judge Boggs, in his concurring opinion, thought the majority had stepped beyond the bounds of the AEDPA: "We must find that this fundamental constitutional rule has been clearly established by Supreme Court precedent. It has not been." *Id*. at 854-55 (footnote omitted).

> to deprive him of a fair trial." *People v. Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).
>
> Again, as discussed above, the facts of the case are inconsistent with a self-defense theory. Defense counsel therefore attempted to mitigate the potential first degree murder verdict by pursing a manslaughter defense. Objecting to the court's omission of the proposed self-defense instructions would have been pointless and futile where defendant had not asserted self-defense. See *People v. Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998) ("[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile.") Thus, defense counsel was not ineffective.

(Mich. Ct. App. Op., ECF No. 6-10, PageID.265-266.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).

The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In making that determination, the Court will look to the merits because counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). Even if a court

9

determines that counsel's performance was outside the range of professionally competent assistance, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner's counsel's failure to object was not professionally unreasonable—or prejudicial—because the objection would have been futile. Applying state law, the court of appeals concluded that the jury instruction was proper. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (observing that the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law") (internal quotations and citations omitted). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same). The court of appeals' conclusion that the self-defense instruction was not proper conclusively resolves that issue for this Court and establishes that any objection here would have been futile under state law.

Moreover, for the reasons set forth above, whether considered under clearly established federal law or under the broader protection afforded by the Sixth Circuit per *Taylor*, an objection would have been futile under federal constitutional law as well. Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance claim relating to the jury instructions.

Petitioner picks through the prosecutor's closing argument and identifies nine statements that he contends rise to the level of misconduct because they were intended to inflame the jury, denigrate Petitioner, or were premised on facts that were never introduced into evidence at trial:

1. He claims or – you know – somehow he claims to the detective that he had to defend himself. How is he defending himself when he shoots somebody in the back with a handgun? (Trial Tr. III, ECF No. 6-7, PageID.225.)

2. You've heard lots of testimony from people. Some of them pretty clear were just lying. (*Id.*)

3. If you're going to kill someone and going to claim self-defense, you have to be in fear from their lives or serious injury of that nature. You haven't heard anything in this case that would even reach that remotely. (*Id.*)

4. He had chicken knocked out of his hand. Therefore, he decided to carry a gun. When he claims the victim in this case confronted him, wanting to fight, he said sure I'll fight with you. Walks up to him, pulls out a gun, starts shooting him. (*Id.*, PageID.225-226.)

5. [He gunned him down.] For no better reason apparently than chicken. For no better reason than he claims I was bullied. He said he was afraid. He wasn't afraid. [He was brave. He had a gun in his hand.] (*Id.*, PageID.226.)

6. He says in his statement that I was afraid. [Riddle] wanted to fight me. I was just trying to defend myself. How? (*Id.*)

7. The only person we can rely on is him, and he's already proven himself to be a liar. (*Id.*)

8. Did he fire it like gangster style, like that? (*Id.*)

9. The first witness we had was Shane Bowling, Mr. Riddle's brother. He'd been driving through that town earlier that day with his mother. He testified to you that Kimple was on the street corner saying come on, man, come on, man to him, trying to get him [to come over]. Why? Well, because he had a gun on him, that's why. He wanted to shoot him. He wanted to shoot Bowling. He didn't get to shoot Bowling. He didn't get out of the car. So you've got Mr. Riddle (T III 91-92).

(Pet'r's Appl. for Leave to Appeal, ECF No. 6-11, PageID.397-398.)

The Michigan Court of Appeals addressed Petitioner's arguments with respect to each prosecutorial statement. The appellate court applied the following standard to Petitioner's claims:

> The role and responsibility of a prosecutor is to seek justice, not just to convict. *People v. Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v. Green*, 228 Mich App 684, 693; 580 NW2d 444 (1998). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *Brown*, 279 Mich App at 135. Error requiring reversal will not be found if the prejudicial effects of a prosecutor's comments could have been cured by a timely instruction. *People v. Mayhew*, 236 Mich App 112, 123, 600 NW2d 370 (1999).
>
> A prosecutor may not make a statement that is unsupported by the evidence, but he or she is free to argue the evidence and all reasonable inference arising from it as it relates to the theory of his case. *People v. Unger*, 278 Mich App 210, 236, 241; 749 NW2d 272 (2008). A prosecutor may argue from the facts in evidence that the defendant or another witness is worthy or not worthy of belief. *People v. Cain*, 299 Mich App 27, 43; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013).

(Mich. Ct. App. Op., ECF No. 6-10, PageID.266.)

The court of appeals concluded that the first seven statements that Petitioner challenged were "supported by the evidence at trial." (*Id*., PageID.267.) The court explained:

> Statements 1, 3, and 6 are supported by the evidence because they fairly invite the jury to consider whether defendant's statements to police that he was defending himself squared with his admission, also made to police, that he shot Riddle in the back while Riddle was running away. As for statements 4 and 5, both Tejada and defendant's mother testified that defendant told them Riddle had bullied him and had knocked a meal out of his hands the day before the shooting. Tejada reported that defendant said this was one of the reasons he started carrying a gun for protection.
>
> Statement 2 anticipates the court's later instructions regarding the credibility of witnesses. This meaning becomes clear when viewed in the following context of the prosecutor's remarks:
>
>> You've heard lots of testimony from people. Some of them pretty clear [sic] were just lying. Other people could have been making a mistake, but then again you've got transcripts. You've actually got audio recordings to consider in this case to determine what actually happened here. When you're determining what happens or what happened here you have to take what the witnesses have told you. You don't have to believe everything they said. If you believe they're lying about something, the court's going to tell you you

> can take away what you believe is the truth or the lie. You can take what you believe is the truth. Some people do lie about something and tell the truth about other things. It's up to you to determine the credibility of all the witnesses you've heard from today, yesterday, and the day before. It's up to you. It's totally in your hands. [Emphasis added.]
>
> Statement 7 alludes to the inconsistencies in defendant's statements. Prior to making statement 7, the prosecutor juxtaposed the physical facts of the case with several of defendant's statements as reported by various witnesses in an effort to convince the jury that defendant had acted with premeditation and deliberation. Defendant's claim that Riddle had the passenger door of the car open looking for a weapon is belied by the fact that the bullets hit the outside of the door, not the inside. Defendant made statements to the police and his girlfriend that he was frightened of Riddle and panicked during their encounter because of that fear, yet he shot Riddle in the back as he was running away. Defendant claimed to have had a chance encounter with Riddle, yet he knew that Riddle lifted weights every night between 8:00 p.m. and 9:00 p.m. The prosecutor surmised that defendant waited for Riddle outside his gym with a gun, knowing that he always left around 9:00 p.m., and may have baited Riddle into a confrontation. "Who knows?" The prosecutor asked, rhetorically. "I wasn't there. The only person we can rely on is him, and he's already proven himself to be a liar." This statement, coming as it did at the end of a series of examples of inconsistencies between the evidence and defendant's statements could fairly be said to be a reasonable inference drawn from the evidence. Prosecutors are not required to state their cases in the blandest of terms, and they may argue from the facts that defendant is not worthy of belief. *Unger*, 279 Mich App at 239, 240. Statement 7 was a reasonable inference arising from the record evidence. *Id.* at 236.

(Mich. Ct. App. Op., ECF No. 6-10, Page ID.267-268) (footnote omitted). Petitioner never addresses the court of appeals' factual determinations regarding the evidence supporting the prosecutor's statements 1-7—not in his application for leave to appeal filed in the Michigan Supreme Court or in his petition filed in this Court.

To be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether

13

the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

A prosecutor is not limited to simply recounting the evidence during closing argument. He may also argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000); *see also Young*, 470 U.S. at 8 n.5 (Court acknowledged as a useful guideline the American Bar Association Standard: "The prosecutor may argue all reasonable inferences from the evidence."). Even though a prosecutor may not denigrate the defense or defense counsel, a prosecutor is free to argue from the evidence that certain defense witnesses are lying. *See Hanna v. Price*, 245 F. App'x 538, 545-46 (6th Cir. 2007); *Bates v. Bell*, 457 F.3d 501, 525 (6th Cir. 2006). Nonetheless, it is unquestionably improper for a prosecutor to argue facts not in evidence. *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger*, 295 U.S. at 78).

In *Coleman v. Jackson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the inferences urged by the prosecutor rationally flow from the identified facts. It is not compelled by those facts. The inference is not even more likely than not. It is simply rational. *Id*. at 656. To succeed in his challenge, therefore, Petitioner must show that the inferences urged by the prosecutor are irrational. He has not made, and cannot make, that showing. The facts identified by the court of appeals as reasonably supporting the inferences are well-supported in the record and the inferences to be drawn from those facts are rational. Petitioner has not presented any evidence, much less clear and convincing evidence, to the contrary.

The court of appeals' conclusion that the prosecutor's arguments were proper did not extend to statements 8 or 9:

> Defendant claims that in these statements, the prosecutor used inflammatory language that had no basis in the evidence presented at trial and was designed merely to excite the jury's prejudices and fear by implying that defendant was a "gangster" and portraying him as a "killer seeking out multiple victims."
>
> Regarding statement 8, no evidence was presented that anyone involved was a gang member, wanted to be a gang member, or exhibited gang mannerisms. However, statement 8 was made in the context of explaining why the casings were found where they were, and how the clip might have fallen out of defendant's gun. Arguably, the prosecutor's reference to holding the gun "gangster style" was intended to do nothing more than suggest that defendant held the gun sideways. Even if the statement was an impermissible attempt to inflame the jury's fears and prejudices, defendant still fails to explain how this statement, in his words, "tipped the scale in favor of the prosecutor."
>
> With respect to statement 9, defendant argues correctly that it is not supported by the evidence. Riddle's brother testified that he saw defendant on the night of May 4, 2012, and that defendant gestured toward him as if he wanted to fight him. Further, Tejada stated that defendant's mother said defendant had talked about killing Riddle's brother. However, the prosecutor's speculation that defendant taunted Riddle's brother because he had a gun and was prepared to kill him on the evening of May 4 finds no support in the record.

(Mich. Ct. App. Op., ECF No. 6-10, PageID.268-269.) The court of appeals, however, recognized that determining the prosecutor's remarks to be improper did not end the analysis. The court continued:

15

> Nevertheless, the trial court's instructions cured any arguably prejudicial effects. Although the trial court did not expressly instruct the jury not to be swayed by inflammatory language, it did instruct the jury that the lawyers' statements and arguments were not evidence. Moreover, it reminded the jury of its oath to "return a true and just just [sic] verdict based only on the evidence and [the court's] instructions on the law." "It is well established that jurors are presumed to follow their instructions." *People v. Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Viewing the record as a whole, there are no grounds on which to suspect that the prosecutor's comments were outcome determinative or resulted in a miscarriage of justice.

(Mich. Ct. App. Op., ECF No. 6-10, PageID.269.) Petitioner never responds to the appellate court's conclusion that, in light of the instructions to the jury, he suffered no prejudice as a result of the improper comments.

It is clearly established federal law that "[a] jury is presumed to follow its instructions." *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Thus, whether or not the prosecutor overstepped the bounds of permissible argument here, the Michigan Court of Appeals' rejection of Petitioner's claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

16

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.

Dated:  February 13, 2019         */s/ Timothy P. Greeley*
                                   Timothy P. Greeley
                                   United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).